# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| Janice A. DARNELL,                                      Plaintiff, <br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>                                     Defendant. | Case No. 4:18-CV-00678-NKL |

## ORDER

Plaintiff Janice A. Darnell appeals the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the decision is affirmed.

**I.   Background**

Darnell, a 56-year-old woman with an associate's degree, claims that on April 20, 2016, she became unable to work at her prior job in accounts receivables due to a combination of impairments including depression, neck injuries, temporomandibular joint syndrome (TMJ), Crohn's, Lupus, arthritis, ulcerative colitis, peptic ulcer disease, lower back injuries and pulmonary nodule. Tr. 114, 227. After her initial claim was denied, Darnell appealed, and an Administrative Law Judge (ALJ) issued an unfavorable decision on April 17, 2018. Tr. 37–48. Darnell submitted additional medical records after the ALJ's decision and requested review by the Appeals Council, but review was denied. Tr. 1–6 (Appeals Council), 8–28 (Records). Having exhausted her administrative remedies, Darnell initiated this review of the ALJ's decision, which is the final decision of the Commissioner subject to judicial review.

The ALJ determined that Darnell's degenerative disc disease, degenerative joint disease, and obesity were severe impairments and that she had the following non-severe impairments: thyroid nodule, TMJ, sinusitis, mild obstructive sleep apnea, restless leg syndrome, gastroesophageal reflux disease (GERD), fatty liver, irritable bowel syndrome (IBS) and affective disorder. Tr. 39–40. The ALJ further found that Darnell's allegation of Crohn's disease is not a medically determinable impairment. Tr. 41. Citing normal to mild findings in objective medical exams and imaging, as well as the two medical opinions, the ALJ determined that Darnell had the residual functional capacity (RFC)

> to perform light work . . . except no overhead work. She must avoid concentrated exposure to vibration, heat or cold, humidity. She cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. She can frequently use her hands bilaterally for gross and fine manipulation, gripping, grasping, handling, and fingering.

Tr. 41–42. The ALJ concluded that Darnell could perform her past relevant work, which was described by the vocational expert (VE) as a composite job consisting of receptionist and accounts receivable clerk. Tr. 47, 87.

**II.     Discussion**

Darnell argues that the ALJ's findings regarding her RFC are not supported by substantial evidence because the ALJ erred in weighing the medical opinion evidence and did not account for Darnell's non-severe impairments. According to Darnell, the RFC is also deficient because the ALJ did not specify which limitations are implicated by her obesity or conduct a function-by-function analysis before specifying an exertional level. Finally, Darnell argues that the ALJ erred in classifying and concluding that Darnell could perform her past relevant work.

A court reverses "the findings of the Commissioner only if they are not supported by substantial evidence or result from an error of law." *Higgens v. Comm'r*, 898 F.3d 793, 795 (8th Cir. 2018) (citation omitted). "Substantial evidence is 'less than a preponderance but . . . enough

that a reasonable mind would find it adequate to support the [ALJ's] conclusion.'" *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quotation marks and citations omitted). If the evidence on the record supports two inconsistent positions, and one of those positions represents the Commissioner's findings, then the Commissioner's decision must be affirmed. *Id.*

*A. Formulation of the RFC*

Darnell argues that substantial evidence on the record as a whole does not support the RFC because 1) there is no medical opinion regarding Darnell's physical limitations from a treating source, 2) the ALJ failed to explain how Darnell's obesity impacts the RFC, 3) the RFC fails to take into account both mental limitations and limitations from Darnell's other non-severe impairments.

A claimant's "residual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, all relevant evidence in the record is considered, *id.*, as are limitations imposed by even non-severe impairments. SSR 96–8p. However, the RFC determination incorporates only limitations "that may affect [the claimant's] ability to perform work-related physical and mental activities." *Id.* at * 1. The RFC must be supported by substantial evidence, including "at least some medial evidence." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (citation omitted). "[T]he burden is on the claimant to establish [her] RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (citation omitted).

Substantial evidence in the record taken as a whole supports the ALJ's RFC determination. The RFC limits Darnell to light work with no overhead work and only occasional climbing,

stooping, kneeling and crawling, which is consistent with Darnell's obesity, degenerative joint disease, and degenerative disc disease. The ALJ noted medical records showing generally "mild objective findings," Tr. 44, 395, "full lumbosacral range," Tr. 44, 404, and improvement with treatment, Tr. 45, 426–42. Based on Darnell's "mild to moderate" cervical spine findings from an MRI submitted after the hearing, the ALJ added the additional limitation of no overhead work. Tr. 45, 568–69. Darnell's knee pain that is reportedly made worse by going up stairs, coupled with objective exams showing only mild knee crepitus and a full range of motion, is also consistent with the RFC's limitations of only occasional climbing, stooping, kneeling and crawling. Tr. 42, 44, 403–10. Finally, although Darnell reported anxiety or depression related to life events, like her mother's death and her husband's health issues, Tr. 403, 408, the lack of mental limitations in the RFC is consistent with Darnell's testimony that she would not have depressive symptoms but for her medical conditions. Tr. 47, 85–86. It is also consistent with her description of her daily activities, the fact that Darnell has not sought counselling, and the benefits Darnell receives from her Wellbutrin prescription. Tr. 40, 47, 105–06, 275–77, 408.

Darnell argues that the RFC is not supported by substantial evidence because the only medical opinion pertaining to physical limitations was submitted by a non-treating source more than a year before the ALJ's decision and before Darnell submitted records from the 2018 MRI. According to Darnell, the ALJ "should have obtained the opinion of an examining or treating physician as to Darnell's functional limitations." Doc. 8, pp. 21–22.

However, the opinion of a state medical consultant can support an RFC determination, *Buford*, 824 F.3d at 797 (affirming RFC even though record did not contain an opinion from a treating doctor), and an ALJ is only required to seek additional evidence when the ALJ cannot make a disability finding based on the existing medical record. *See Martise v. Astrue*, 641 F.3d

909, 926–27 (8th Cir. 2011) ("[T]he ALJ is required to order medical examinations and tests only if the medical records presented to [the ALJ] do not give sufficient medical evidence to determine whether the claimant is disabled."). As discussed, the RFC is supported by substantial evidence. Moreover, while the ALJ noted that the 2018 MRI was "not materially different from [a pre-onset] MRI," the ALJ nonetheless specified additional limitations beyond those in the consultant's opinion to account for the later medical evidence. Tr. 41–42, 44–45, 549, 568–69. The Court cannot conclude that the ALJ failed to develop the record or that the RFC was otherwise unsupported by substantial evidence.

Darnell also argues that the ALJ erred by failing to specify if any functional limitations are related to Darnell's obesity. Doc. 8, p. 22. According to Darnell, it is unclear whether the ALJ took Darnell's obesity into consideration. *Id.* at 23.

However, the ALJ clearly considered obesity and expressly explained how. Despite the fact that Darnell did not even allege obesity as a basis for disability, Tr. 227, the ALJ stated that "[Darnell's] obesity is documented in the medical record[,] was considered by the medical sources and . . . the effects of [Darnell's] obesity were considered and are incorporated in the [RFC]." Tr. 41. The records reviewed by the medical consultant consistently noted Darnell's BMI. *See, e.g.* Tr. 404, 409. The ALJ expressly noted Darnell's height and weight in the paragraph devoted to explaining how Darnell's obesity was assessed relative to her other impairments, Tr. 41, referenced Darnell's weight throughout the decision, Tr. 43, 46, and specifically referenced Darnell's BMI as reported in her medical records. Tr. 45, 561. In other words, the ALJ properly considered Darnell's obesity and explained how it was incorporated in the RFC. *See Baker v. Colvin*, 620 F. App'x 550, 557 (8th Cir. 2015) (affirming analysis when obesity was listed as a severe impairment, the ALJ noted claimant's height and weight and addressed weight issues in medical history).

5

Darnell claims that the RFC is not supported by substantial evidence because the lack of mental limitations in the RFC is inconsistent with 1) the ALJ's determination at step two that Darnell has mild mental limitations and 2) the opinion submitted by a state consultant that Darnell has moderate limitations in concentration, persistence and pace. Doc. 8, p. 17–19, 24.

However, the ALJ did consider Darnell's claimed mental limitations, and omitted them from the RFC based on evidence that Darnell finishes what she starts, manages her personal finances, and can follow written instructions. Tr. 40, 276. The ALJ also found that Darnell regularly engages in activities that require mental capabilities similar to those required for employment, like playing computer games, cooking, driving, going out alone, and handling her finances. Tr. 43, 60, 86, 276–78.

Although the ALJ did assign "significant weight" to an opinion advising that Darnell has moderate limitations in concentration, persistence and pace, the ALJ also found inconsistencies between the opinion and the record as a whole. Tr. 47, 105. Since an "ALJ is not required to rely entirely on a particular physician's opinion," and a medical opinion must "be well-supported by medical evidence to be entitled to substantial or controlling weight," *Martise*, 641 F.3d at 926–27 (citations omitted), the Court cannot conclude the ALJ erred here. The ALJ reviewed Darnell's initial reports to her primary care physician regarding her depression and the follow-up, Tr. 44, 403–10, noted Darnell's testimony that her depressive symptoms were related to her medical conditions, Tr. 47, 85–86, and highlighted that "there is no record of [Darnell] seeking counseling or therapy for her mental impairment, nor is there indication of a need for such or a referral of such." Tr. 47, 106. The ALJ also found that Darnell "is now prescribed medication with some benefit." Tr. 47, 106, 403–10. Based on this evidence, the ALJ concluded that an RFC without mental limitations "is consistent with and supported by the totality of the evidence." Tr. 47. The

6

ALJ adequately explained a basis for tailoring the RFC to the substantial evidence in the record.

Finally, Darnell claims the RFC is not supported by substantial evidence because the ALJ failed to consider Darnell's other non-severe impairments, namely TMJ. Doc. 8, p. 24. Darnell points to a CT scan from March 2018 that was submitted after the ALJ's decision that shows "severe bilateral TMJ osteoarthrosis."[1] Tr. 25. Although Darnell cites heavily to the medical records, she does not explain how her TMJ impacts her ability to work or would otherwise implicate her RFC.[2] Furthermore, the ALJ noted Darnell's reports of pain due to TMJ, Tr. 42, 44, 456, as well as Darnell's testimony regarding her TMJ, Tr. 46, 76–77, and the Appeals Council concluded that the additional medical "evidence does not show a reasonable probability that it would change the outcome of the decision." Tr. 2. In other words, Darnell merely highlights medical records that could potentially conflict with the ALJ's conclusion, without specifying why the evidence relied on by the ALJ is insufficient or the conclusions drawn are invalid. When the evidence on the record supports two inconsistent positions, and one of those positions represents the Commissioner's findings, the Commissioner's decision must be affirmed. *Wright*, 789 F.3d at 852. Accordingly, the Court will not reverse.

B. *Specificity of Findings Supporting the RFC*

Darnell also argues that the ALJ erred by describing Darnell's limitations as "light work" because it is "impossible to determine how the ALJ assessed [her] actual ability to walk and stand,"

---

[1] Darnell also cites records dated May 1, 2018. Because the ALJ issued the decision on April 17, 2018, this evidence falls outside the review period. *See* 20 C.F.R. § 404.970(b) ("[N]ew and material evidence . . . shall [be considered] . . . only where it relates to the period on or before the date of the [ALJ] hearing decision.").

[2] To the extent Darnell also challenges the ALJ's earlier classification of TMJ as "non-severe," this lack of argument regarding how her TMJ "limit[s] [her] physical or mental ability to do basic work activities" similarly precludes relief. *See* 20 C.F.R. § 404.1522 (defining "non-severe" impairments).

functions required for light work. Doc. 8, p. 20. In support of remand, Darnell cites *Pfitzner v. Apfel,* a case in which the ALJ's "fact-findings . . . [were] incomplete or nonexistent," and the ALJ's determination "articulated only the outermost contours of [the claimant's] residual functional capacity" such that a reviewing court could not tell whether the ALJ had found any physical limitations. 169 F.3d 566, 568–69 (8th Cir. 1999).

The ALJ's decision, however, does not resemble that in *Pfitzner*. First, in assessing Darnell's RFC, the ALJ did more than merely "recount[] most of the relevant medical evidence." *Id.* at 568. The ALJ specifically considered how each limitation, to the extent shown in the medical records, affects Darnell's RFC. Tr. 44–46. The ALJ also considered Darnell's testimony and her description of her daily activities. Tr. 42–43. Moreover, the RFC determination specified limitations. Unlike the "general terms" in *Pfitzner*, the ALJ here made "explicit findings." *Depover v. Barnhard*, 349 F.3d 563, 567 (8th Cir. 2003) (distinguishing *Pfitzner* based on specificity of RFC determination). The ALJ expressly specified Darnell's limitations and abilities to perform overhead work, use her hands, climb in various ways, stoop or kneel in various ways, and work in environments that would expose her to vibration, extreme temperatures or humidity. Tr. 41–42. Considering this level of detail in the RFC and the accompanying analysis, the Court cannot conclude ALJ erred by failing to address other specific functional areas.

C. *Ability to Perform Prior Work*

Darnell contends that the ALJ improperly considered only two of three parts of her prior relevant work, which she considers to be a single composite job comprised of receptionist, accounts receivable clerk and office administrator or manager. Doc. 8, p. 12. The Commissioner classifies Darnell's relevant work as two positions: one composite job consisting of receptionist and accounts receivable clerk lasting one year, and then another job as office administrator lasting

five years. In other words, the parties dispute whether the ALJ can temporally bifurcate Darnell's employment history and find Darnell capable of performing a job as it existed for one year.

"[A] claimant is not disabled if [she] retains the RFC to perform . . . the actual functional demands and job duties of a particular past relevant job." *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007) (citing *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) and SSR 82–61). When a particular past relevant job is a composite job, or one with "significant elements of two or more occupations," SSR 82–61, the claimant must be capable of performing all component parts of that job. But a claimant need not be capable of performing all past relevant work and will be found "not disabled" if he or she can perform even one past relevant job. *See, e.g. Young v. Astrue*, 702 F.3d 489, 490–91, 493 (8th Cir. 2013) (affirming "not disabled" finding when claimant was able to perform subset of prior jobs); *Samons v. Astrue*, 497 F.3d 813, 821 (8th Cir. 2007) ("We need not determine whether [the claimant] was able to return to her other past relevant work since we have concluded that nothing in her RFC affects her ability to perform [one prior job]."); *Gowell v. Apfel*, 242 F.3d 793, 798–99 (8th Cir. 2001) (affirming "not disabled" determination because claimant could perform at least one of four prior relevant work positions).

Although the record could be clearer, a reasonable reading shows that both the ALJ and the VE considered the first year of Darnell's work separately from her later experience. Darnell testified that she started at Burr King as "accounts receivable and basically just you know a receptionist type person," but that she later took on additional duties, like "all the HR duties with health insurance for all the employees and benefits." Tr. 65. When the ALJ specifically followed up to distinguish when and how Darnell's duties changed, Darnell confirmed that she was "a receptionist and accounts receivable" for the first year.[3] *Id*. Based on this testimony, the VE

---

[3] Darnell's earnings report also suggests that Darnell's responsibilities increased over time. Even

9

categorized Darnell's first year of work separately from Darnell's "later" work:

> the position where [Darnell] did receptionist and accounts receivable, that's – it sounds like it is a composite job. The receptionist being 237.367-038. And that's sedentary, SVP of four. And the other being the accounts receivable clerk 216.482-010. Sedentary, SVP of five.
> And then later on where she did numerous different job functions, that would be office administrator or office manager, either one.

Tr. 87. In other words, the record supports finding that the ALJ and the VE considered Darnell's past relevant work as including two positions held at different times. There is evidence in the record to support this conclusion, and therefore, it is entitled to deference.

When considered independently, Darnell's one year as receptionist and accounts receivable clerk qualifies as past relevant work. "Past relevant work is work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Darnell's earnings record shows she worked at Burr King within the past 15 years, and that the job constituted substantial gainful activity in 2010–11. Tr. 203. Based on the Dictionary of Occupational Titles (DOT) and the VE's testimony, it takes between three and six months to achieve average performance as a receptionist, and six months to one year to achieve average performance in accounts receivable. Tr. 87; DOT, Appendix C (4th Ed., 1991). Since Darnell testified that she performed these jobs alone for a year before taking on additional duties, Tr. 65, she performed the position long enough to learn the composite job. Therefore, Darnell's position working in a composite job consisting of receptionist and accounts receivable clerk for one year constitutes past relevant work.

Darnell also argues that the ALJ failed to make explicit findings regarding the physical and mental demands of Darnell's prior work and compare those demands to the RFC. Doc. 8, pp. 15–

---

accounting for partial-year employment in 2010, her earnings are substantially higher later in her tenure. Tr. 203 (increasing from $16,200 in 2010 and $21,273 in 2011 to $29,205 in 2015).

17. When deciding whether a claimant can perform past work, an ALJ is "required to make 'explicit findings' regarding the physical and mental demands of [the] past work, and to compare those demands with her [RFC] to determine whether she could perform the relevant duties." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citation omitted); *accord* 20 C.F.R. § 404.1560(b). Typically, "the ALJ may discharge this duty by referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work," *Pfitzner*, 169 F.3d at 569, but when the past work is a composite job, the determination is instead "evaluated according to the particular facts of each individual case." SSR 82–61.

Here, Darnell submitted information regarding the demands of her prior jobs in a Work History Report, Tr. 259–40, and testified at the hearing regarding the demands of these jobs. Tr. 62–66, 83–84. When concluding Darnell is capable of performing past relevant work, the ALJ referenced both the Work History Report, as well as VE testimony based on Darnell's own description of her job. Tr. 48. Accordingly, the Court cannot conclude that the ALJ failed to calculate the demands of Darnell's past relevant work.

Furthermore, even if the ALJ could have made more explicit findings regarding the demands of Darnell's work, Darnell has not shown that any such demands conflict with her RFC. *See Samons*, 497 F.3d at 821 (affirming ALJ despite lack of explicit findings because prior work did not implicate limitations in RFC); *Rose v. Apfel*, 181 F.3d 943, 945 (8th Cir. 1999) (affirming ALJ despite lack of findings regarding demands of prior work when "the ALJ had already determined that [such] limitations did *not* significantly affect [claimant's] ability to work"). Regardless of whether the DOT specifies receptionist and accounts receivable clerk positions involve frequent reaching, or whether reaching conflicts with the prohibition against overhead work in Darnell's RFC, Darnell's description of how her job was actually performed does not

include reaching. Tr. 260 (listing 0 hours).[4]  And although Darnell argues that her RFC specifying "light work" is inconsistent with her past job, which required her to sit for 8 hours, Darnell did not report problems sitting on her application for benefits, Tr. 278, Darnell's RFC does not contain any limitation that precludes sitting, Tr. 41–42, and "light work," otherwise incorporates sedentary work.  20 C.F.R. § 404.1567(b).  Therefore, Darnell has not shown a conflict between how her past relevant work was actually performed and her RFC.

Based on allegations that the RFC is deficient, Darnell argues that the ALJ's hypothetical questions to the VE do not constitute substantial evidence that Darnell is capable of performing past relevant work.  However, "[v]ocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work. . . . Therefore, [Darnell's] claim that the ALJ posed a defective hypothetical to the vocational expert is moot." *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003).

Finally, Darnell argues that the ALJ erred by concluding that Darnell can perform the composite job as it is generally performed.  Doc. 8, pp. 13, 15–17.  However, the ALJ questioned Darnell and heard testimony regarding Darnell's prior work, Tr. 62–66, 69–70, and cited Darnell's work history report in the step four analysis.  Tr. 47–48, 259–60.  The ALJ also concluded that Darnell "is able to perform [the composite job] as actually . . . performed."  Tr. 48.  Thus, the fact that the ALJ also concluded that Darnell could perform the job as generally performed in harmless. *Cf. Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (error is harmless if the ALJ would inevitably reach the same result).

---

[4] Darnell argues that this description applies only to the account receivable part of her job, not the receptionist duties.  Doc. 14, p. 4.  However, the description of the job includes "customer service" and "answer phones," functions associated with the receptionist title.  Tr. 260.

**IV.     Conclusion**

For the reasons stated above, the ALJ's determination is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  May 20, 2019
Jefferson City, Missouri